### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREW PERRONG,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br>v.<br><br>**CHIMA, L.L.C,**<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Andrew Perrong ("Plaintiff" or "Mr. Perrong") brings this Class Action Complaint and Demand for Jury Trial against Chima, L.L.C., ("Defendant" or "Chima") to stop the Defendant from violating the Florida Telephone Solicitation Act ("FTSA") and Telephone Consumer Protection Act ("TCPA") by sending pre-programmed, automated text messages sent using an automatic telephone dialing system ("ATDS"). The Plaintiff also alleges that Defendant violated the FTSA by making automated calls from Florida.

Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Andrew Perrong is an individual.

2. Defendant Chima LLC is a Florida limited liability company with restaurants located in this District.

## JURISDICTION AND VENUE

3.      The Court has federal question jurisdiction because this matter arises under the TCPA, a federal statute. The Court also has supplemental jurisdiction because the FTSA claim relates to the same telemarketing campaign as the TCPA.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated messages to the Plaintiff were placed into and received in this District.

## BACKGROUND

The Florida Telephone Solicitations Act

5.      The FTSA, Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

6.      It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." This includes to a number listed on the National Do Not Call Registry. Fla. Stat. § 501.059(4)

7.      It is also a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

8.      A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods

2

or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

9. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

The TCPA Prohibits all Automated Calls and Text Messages To Protected Numbers

42. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

43. Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy and therefore protected them, as in the case of cellular phones, such as Mr. Perrong's cellular phone. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

44. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live messages, and such messages can be costly and inconvenient.

45. Under the TCPA, a text message is treated as a call. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

46. The TCPA provides a private cause of action to persons who receive messages in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

## COMMON ALLEGATIONS

10. Defendant Chima operates a chain of Brazilian "churrascaria" steak restaurants, including one located in Philadelphia, PA and another in Fort Lauderdale, FL.

11. Chima is headquartered in Fort Lauderdale, FL.

12. To promote its restaurants, Defendant Chima sends automated, "robocall" telemarketing text messages to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do Not Call Registry.

13. To send their text message, Defendants rely on automated technology provided by an as yet unidentified third party provider.

14. Defendant sends out these text messaging blasts *en masse* to persons who had previously made reservations with the restaurant, but who had never consented to receive them.

## PLAINTIFF PERRONG'S ALLEGATIONS

15. Plaintiff Perrong is the subscriber and the sole user of the cellular phone number 215-208-XXXX.

16. The Number is assigned to a cellular telephone service.

17. Plaintiff Perrong registered his phone number on the Do Not Call Registry on December 18, 2017.

18. That is a residential number that the Plaintiff uses for personal calls and is not associated with a business.

19. The Plaintiff has never consented to receive telemarketing calls or text messages from the Defendant, including those sent using automated means.

20. Despite that, the Defendant sent at least two texts to the Plaintiff.

21. One text was on October 12, 2022 and one was on October 24, 2022.

22. Both text messages were sent from the same Caller ID, (888) 234-4370.

23. The text messages are below:

> October 12
>
> CHIMA: Enjoy a dessert on us with the purchase of 2 complete rodizio dinners. Book now and mention code SWEET to get yours! http://itxt.io/2Tk00AqSs
>
> October 24
>
> CHIMA: Enjoy a complimentary dessert on us. Book now and mention code SWEET to get yours! http://itxt.io/1g300AqSs

24. Prior to the filing of this lawsuit, the Plaintiff contacted Chima regarding the automated texts.

25. The Plaintiff received a response from Cintia Lenzi, who identified herself as working for Chima Steakhouse Corporate Office in Florida.

26. Ms. Lenzi stated that Chima Steakhouse Corporate Office collects Open Table reservation information, to include telephone number, of previous reservations made with its restaurant months and years prior and sends text messages from a list.

27. Indeed, Ms. Lenzi informed Mr. Perrong that his number was "on the list" from such a reservation made nearly 10 months prior.

28.     However, there was no part of the process of making a reservation where the Plaintiff, or any other individual, consented to receive text message or other telemarketing contacts.

29.     The texts were sent with an automated system for the selection or dialing of telephone numbers as the texts were generic, included a redemption code and included shortened website links.

30.     The shortened website link takes longer URL links and compress them into smaller links. After the link is clicked on, it is converted back to its full length on a web browser.

31.     A telemarketing company use shortened links for automated text messages because when text messages are being sent *en masse*, they are often charged per the character.

32.     To create a shortened link, an individual must go to a website and create a compressed link.

33.     It would be inefficient and unlikely for a text message sender to do this if the text sent was being sent by an individual as opposed to through an *en masse* platform.

34.     Similarly, it would be unlikely for a text message sender to use a redemption code such as SWEET if the text sent was being sent by an individual as opposed to through an *en masse* platform.

35.     For the aforementioned reasons, the message the Plaintiff received was sent using automated means. This is especially so because it bears indicia that it was created from a generic, scripted message.

36.

Defendants' Use of an ATDS

37. As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

38. The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the defendant employ[s] [ATDS] capacities to make automated calls," *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful." *Id.* at 879 (cleaned up).

39. In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns." *Id.* at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database. *See id.*

40. The system(s) Defendant used to send the message to Plaintiff is/are an ATDS because it would be illogical to manually type out a telephone number and generic message content when this process could easily be automated through lists and computerized scripting.

41. It would also be illogical to manually send text messages using data obtained from a computerized list, when the computerized list itself could be used to send the messages directly and either randomly or sequentially.

42. As this Court has remarked, other courts have held, post-*Facebook*, that allegations similar to those as here of the absence of a relationship between the parties, the lack of personalization in the messages, an admission that a list was utilized, and the random or automated nature of the automation device, are all indicia of use of a random or sequential dialing device that gives rise to the inference at the pleadings stage that an ATDS was used to make the calls. *See Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

43. The unauthorized telephonic sales messages that Plaintiff received from Defendant, as alleged herein, have harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and occupied and otherwise disturbed the use and enjoyment of his phone. At least one of the text messages disrupted the Plaintiff while he was attending a law school class on advertising and marketing law.

44. Seeking redress for these injuries, Plaintiff Perrong, on behalf of himself and Classes of similarly situated individuals, brings suit under the FTSA and TCPA.

## CLASS ALLEGATIONS

45. Pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), the Plaintiff brings this action on behalf of the following putative classes (the "Class"):

> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S. (1) who received a telephonic sales call regarding Defendant's goods and/or services

(2) using the same equipment or type of equipment utilized to call Plaintiff (3) from July 1, 2021 through the date of trial.

**Telephone Consumer Protection Act ATDS Class:** All persons in the U.S. (1) who received a text message from the Defendant on their cellular phone, pager, specialized mobile radio phone, radio common carrier phone, or any other phone assigned to a service for which the called party is charged for the call (2) which was sent using an Automatic Telephone Dialing System (3) but who never provided their prior express written consent to receive such messages (4) from the four years prior to the filing of the complaint through the date of trial.

46. Defendant and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

47. Plaintiff brings all claims in this action individually and on behalf of Class Members against Defendant.

### Numerosity

48. Members of the Class are so numerous that their individual joinder is impracticable.

49. On information and belief, based on the technology used to call Plaintiff, which is used to make calls *en masse*, Members of the Class number in the thousands.

50. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

51. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

### Commonality

52. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.

53. Common legal and factual questions include, but are not limited to, whether Defendant have violated the Telephone Consumer Protection Act or Florida Telephone Solicitation Act, and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

### Typicality

54. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, received unsolicited telephonic sales calls from the Defendant without giving them his consent to receive such calls.

### Adequacy of Representation

55. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.

56. The interests of Class Members will be fairly and adequately protected by Plaintiff and his counsel.

### Superiority

57. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.

58. Many of the Class Members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendant's liability.

59. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

60. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

61. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.

62. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059
### On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class

63. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

64. Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

65. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

66. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

67. Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

68. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

69. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

70. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## COUNT II

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the ATDS Class)**

71. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

12

72. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class using an ATDS.

73. The Defendant's violations were negligent, willful, or knowing.

74. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made using an ATDS.

75. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls or sending messages using an ATDS, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendant from using an autodialer to advertise their goods or services or from violating the TCPA in the future;

B. A judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff request a jury trial as to all claims of the complaint so triable.

DATED this 21st day of November, 2022.

        ANDREW PERRONG,
        By his attorney

        */s/ Jeremy C. Jackson*
        Jeremy C. Jackson (PA Bar No. 321557)
        BOWER LAW ASSOCIATES, PLLC
        403 S. Allen St., Suite 210
        State College, PA 16801
        Tel.: 814-234-2626
        jjackson@bower-law.com

        Anthony I. Paronich (subject to *pro hac vice*)
        Paronich Law, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043
        [o] (617) 485-0018
        [f] (508) 318-8100
        anthony@paronichlaw.com